**United States District Court**
**The**
**District of Massachusetts (Boston)**

ELLA R. COSTA
Plaintiff

v.

R.J. Connelly
 Defendant

## INTRODUCTION

1. Parties

   a. Plaintiff Ella Costa is a resident of Norfolk County, Massachusetts.

   b. Defendant RJ Connelly is a licensed attorney practicing law in Pawtucket, Rhode Island, and

resides in Mystic, Connecticut.

2. Jurisdiction and Venue

   a. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is

complete diversity of citizenship between the Plaintiff and Defendant, and the amount in

controversy exceeds $75,000.

   b. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the Plaintiff resides in this

district and a substantial part of the events giving rise to the claims occurred herein.

## FACTUAL BACKGROUND

1. Death of Ronald Costa and Its Aftermath

a. Incident Overview

1. On December 6, 2010, Ronald Costa was involved in a fatal car accident on Interstate 95 in Connecticut. Ronald's vehicle was stationary in the right travel lane with its lights turned off at the time of the collision.

2. A Cadillac Escalade, operated by Gwendolyn Neri, collided with Ronald's vehicle. The accident occurred during nighttime hours, resulting in significantly reduced visibility on the highway.

3. The stationary condition of Ronald's vehicle and the absence of illumination from the lights made it difficult for approaching drivers to discern the vehicle, impacting the driver's ability to avoid the accident.

4. The impact caused Ronald's vehicle to overturn, resulting in catastrophic injuries. Emergency responders arrived at the scene and Ronald was found extricate from the vehicle through the windshield from the wreckage.

5. Ronald was transported to a nearby hospital for medical treatment; however, he was pronounced dead at the westerly hospital in Rhode Island

6. Gwendolyn Neri was accompanied by her two children at the time of the incident. The implications of this tragic event extend to Ronald's family, Ms. Neri, and the broader community.

b. Legal Considerations

1. The circumstances of Ronald's death raise critical questions regarding vehicle safety, nighttime visibility on highways, and the accountability of drivers for ensuring operational

vehicle lights as Ronald vehicle was shut down on the right travel lane and an upcoming curve on the highway making it difficult for drivers to see what was ahead of them the vehicles lights were turned off.

2. Background on Ronald Costa

a. Mental Health Challenges

1.  Ronald Costa faced significant mental health challenges that critically impacted his judgment and actions, particularly during the transition of his mother, Carmella Costa, to Rhode Island. Documentation from the Dedham District Court reveals a history of profound mental health difficulties, including severe psychosis as per a documented diagnosis related to a criminal case decided in 2007.

2. This diagnosis raises serious concerns about Ronald's capacity to make sound decisions, specifically in managing his mother's well-being, leading to potential implications of neglect or abuse in her care.

3. At the time of his mother's relocation, Ronald was experiencing acute mental health issues along with periods of homelessness, which raised concerns about his capability to provide adequate care and support for her needs.

b. Legal and Ethical Dilemmas

1. The implications of Ronald's mental health struggles present significant ethical and legal challenges regarding his ability to act in the best interests of his mother.

2. Following Carmella Costa's placement into state care under the guardianship of RJ Connelly, allegations emerged concerning the potential misuse of this guardianship, endangering her well-being.

3. RJ Connelly's awareness of Ronald's mental health and homelessness poses ethical questions regarding his responsibilities and intentions in relation to Carmella's care.

3. Wrongful Death Lawsuit Initiation

1.  In the aftermath of Ronald Costa's passing, R.J. Connelly initiated a wrongful death lawsuit, presenting a misleading characterization of Ronald as a stable individual with a successful quality of life.

2. This narrative is contested by evidence indicating that Ronald was, in actuality, an abusive unemployed and homeless  residing in his vehicle at the time of his death, as corroborated by state police reports and Massachusetts and Rhode Island court records.

The discrepancy between R.J. Connelly's portrayal of Ronald Costa as a functioning professor and the reality of Ronald's life raises critical questions about the truthfulness of the claims made in the lawsuit. Connelly presents Ronald as someone who, had it not been for the tragic accident, would have continued to lead a productive life due to his position as a professor and his high quality of life. However, the nuances of Ronald's actual situation reveal significant struggles related to mental health and homelessness that are pivotal to understanding the integrity of the lawsuit.

R.J. Connelly's allegations are called into question, particularly because Ronald was experiencing a profound crisis related to the impending loss of his mother, Carmella Costa, to Connelly. Connelly's imposition of severe sanctions barred Ronald from seeing his mother, exacerbating his mental distress. Despite being fully aware of Ronald's ongoing mental health challenges, Connelly chose not to offer any assistance. Instead, he left Ronald in a vulnerable

state, forcing him into homelessness and demanding unreasonable sanctions that aimed to exert total control over Carmella Costa.

This situation reveals a disturbing pattern of behavior from Connelly, characterized by a disregard for Ronald's well-being. Rather than providing the help that Ronald desperately needed, Connelly's actions appear intent on inflicting further harm. Ronald's deteriorating mental health placed him in a critical state, leading to tragic outcomes, which raises grave concerns about whether Ronald Costa took his own life or if there was foul play involved. The possibility that R.J. Connelly may have orchestrated events leading to Ronald's demise for the benefit of a wrongful death lawsuit concerning Carmella Costa adds a troubling layer of complexity to the situation.

Overall, this circumstances necessitate a thorough examination of R.J. Connelly's motivations and the ethical implications of his actions, which seem to prioritize personal gain over the welfare of Ronald Costa, an individual who clearly required substantial support and intervention during a crisis.

4. Connelly did not disclose relevant facts about Ronald's mental illness and homelessness, shaping a distorted view of Ronald's life circumstances before a wrongful death lawsuit.

5. Connelly's misleading portrayal raises ethical concerns about his motives in pursuing the wrongful death action, potentially prioritizing financial gain over the genuine care required for individuals facing crises.

Obstruction of Family Advocacy

f. R.J. Connelly has demonstrated a pattern of neglectful behavior, including withholding essential health information from family members, obstructing their ability to advocate for Carmella's best interests.

4. Allegations of Misconduct in Guardianship Appointment

5. Investigation Findings

Following an inquiry initiated by the Walpole Police, it was revealed that Carmella was residing in a care facility in Warwick, Rhode Island. During those proceedings, ombudsman Donna Lonschein provided significant information about Carmella's health, including a questionable diagnosis of dementia. Notably, subsequent assessments revealed clear cognitive awareness in Carmella, thereby raising doubts about the legitimacy of the dementia diagnosis attributed to her. In discussions concerning Carmella's care, Lonschein ominously stated: "You will never get custody of Carmella," highlighting potential obstructions to advocacy efforts on behalf of the Plaintiff's grandmother.

Upon reconnecting with Carmella, it was determined that during the Hopkinton probate court proceedings in 2009, R.J. Connelly misled the court by claiming he conducted a diligent search for Carmella's daughter, Debra Young. Connelly falsely asserted that Debra, residing in Mansfield, Massachusetts, expressed a desire to have no relationship with her mother, Carmella Costa. Debra has consistently clarified to Connelly that she is not Carmella's biological daughter and has relayed to him that his inquiry concerned the wrong individual.

Despite these clear denials, Connelly misled the Rhode Island probate courts by omitting vital information regarding Carmella's legitimate biological daughter who resides in Walpole, Massachusetts.

6. Patterns of Deception and Ethical Concerns

Such conduct by Defendant Connelly reflects a disturbing pattern of deception and misinformation, raising significant ethical concerns regarding actions by individuals in positions of guardianship. The legitimate relatives of Carmella Costa must be recognized and respected within any guardianship proceedings.

7. Importance of Communication

The apparent failure to communicate effectively with the Walpole Police Department is a significant oversight. This lack of dialogue heightens concerns about guardianship dynamics and insinuates potential financial motives for the mismanagement of Carmella's affairs. Effective communication could have bridged gaps between all relevant parties and ensured the safeguarding of Carmella's welfare.

8. Recent Family Participation

The recent resurgence of family involvement in decisions regarding Carmella's care has highlighted excessive and unjustified access restrictions imposed by R.J. Connelly, severely limiting meaningful family engagement. Such restrictions are justified by unfounded claims of Carmella's incapacity to make informed decisions about her healthcare, which are contradicted by multiple medical evaluations indicating that she possesses the necessary cognitive abilities for participation in her healthcare decisions.

Breach of Fiduciary Duty

c. The Defendant breached his fiduciary duty by imposing a "Do Not Hospitalize" order, adversely affecting Carmella's medical care and overall safety.

d. The Defendant grossly mismanaged Carmella's financial resources and health care decisions, failing to adequately consult or communicate with her family regarding these critical matters.

e. The Defendant misled the Hopkinton Probate Court concerning Carmella's competency and her status as an heiress to her deceased son's estate, leading to potential financial exploitation, thereby raising significant concerns regarding misrepresentation by the Defendant.

4. Conclusion

1. The allegations concerning Ronald Costa's death, his mental health challenges, the handling of his mother's guardianship, and the wrongful death lawsuit initiated by R.J. Connelly warrant comprehensive legal scrutiny.

2. There is a pressing need for an in-depth inquiry into the factual circumstances surrounding Ronald's life, the incident leading to his death, and the motivations behind the subsequent legal actions taken by Connelly.

3. This document sets forth the fundamental allegations of fact that outline the severity of the situation involving Ronald Costa, fostering an understanding of the broader implications for all parties affected by this tragic event.

4. Claims for Relief

Count I: Breach of Fiduciary Duty

The Plaintiff alleges that the Defendant has breached his fiduciary duty to Carmella Costa by failing to act in her best interests, mismanaging her personal and financial affairs, and neglecting her health care needs.

Count II: Negligence

The Plaintiff contends that the Defendant has been negligent in the supervision of Carmella's well-being, leading to exacerbated medical conditions and significant emotional distress among family members due to the Defendant's actions and inactions.

Count III: Emotional Distress

As a direct result of the Defendant's misconduct, the Plaintiff has suffered ongoing emotional distress, anxiety, and uncertainty regarding the health and welfare of Carmella Costa, justifying claims for damages.

WHEREFORE, the Plaintiff prays that this Court grant the following relief:

1. A comprehensive review of the appointment and actions of guardian R.J. Connelly.

2. A reevaluation of Carmella Costa's mental competency and legal guardianship status.

3. Restoration of my right to have access to  in Carmella. Costa's medical records

4. Any further relief this Court deems just and appropriate.

Date: October 31, 2024

Respectfully Submitted

Ella Costa